surely broad enough to embrace the original record or patent; then suppose the defect to be in that and in the specification also, however they are to be amended. It becomes a question of the admissibility of evidence, and the next highest evidence of the true extent of the invention is the model, being one of the prerequisites of the statute, and of the foundation upon which the patent issues; it is the highest original source which exists, to be resorted to under such circumstances for showing the defects, and I think may be used. I am happy to find that in this opinion, I am fortified by Judge Holt and the former Commissioner Bishop's opinion on the same subject.

The commissioner refers me to the report of the examiners adopted by him as his decision. The first objection stated in that document relates to the capacity of the machine for carrying its cutter apparatus folded upon the main-frame, the adjustability of the length of the pitman which communicates motion to the cutters, &c. The description as here given of the claim is supposed to be different from that which has been made according to the true mode of folding as claimed, which is not by turning the runners 22 and cutting apparatus upon their pivot K and then fold them over on the machine by means of the hinge I. The hinge I is attached to the rear of a swivelled piece which is free to turn on the socket piece, J, and the folding of the finger-beam is due to the swivel piece which turns in the socket-piece and not turned on pivot K, which holds the socket piece to the under side of the projecting end of the main frame. It would not therefore be necessary to disorganize the machine before the finger-beam could be folded, the hinge I being attached to the rear of the swivel-piece and not on the socket-piece. It is alleged that "Mr. Ball has never proposed to connect the socket-piece in any other position than just where it is shown in the original patented drawing, and also in the original model, viz. to the under side of the cross-piece of the frame, and that while the socket-piece is so attached, the finger-beam can be raised, turned, and folded over the main frame in front of the axis of the main-supporting wheels, and further that it is owing to the socket-piece being attached to the under side of the front cross-piece as described in the reissues; that it is held in the folded position, while the machine is being drawn from one field to another, and that too without any other means to hold it close to the side of the frame than simply its own gravity, a means which the commissioner seems to have overlooked." I have examined the model of Ball, and am satisfied that it is capable of the alleged function, and which is not considered as new matter. It has already been shown that the original model may be resorted to as evidence of the extent of the true invention, with respect to its affecting third persons by the reissues; it is probable that none other than those ex-

amining for the purpose of pirating the invention would be the description of persons, and therefore it is not of much matter. I think it appears also that neither the Wheeler nor Haines machine is affected by the claims as made by Ball. I have also satisfied myself by a careful examination and comparison that neither the Sylla and Adams machine of 1853, P. Sylla's of 1855, nor Haines' of 1855 are applicable to Ball's ninth claim.

As to the number of models referred to, without stating specifically what part or parts are applicable to the claims of Ball, and on account of the "condition of the art," I have not particularly examined them. And I hope the commissioner, upon more reflection, will be satisfied that the law does not impose any such unreasonable, onerous duty on the judge. From the foregoing views which I have taken of this case, and of the principles settled in case 831, [Ex parte Ball, Case No. 810,] I am satisfied that there is error in the refusal to grant the said reissue, and the said decision is hereby reversed and annulled, and that the said reissues be made accordingly as prayed.

---

## Case No. 812.

### Ex parte BALL.

[Law, Dig. 620.]

[The case noted under this title in Law, Dig. 620, is the same as Ex parte Ball, Case No. 810.]

---

BALL v. BAILIE. See Case No. 815.

BALL, (DUNBAR v.) See Case No. 4,128.

BALL, (EMANUEL v.) See Case No. 4,433.

BALL, (GOVERNOR OF STATE OF ARKANSAS v.) See Case No. 530.

---

## Case No. 813.

### BALL v. PATTERSON.

[1 Cranch, C. C. 604.] [1]

Circuit Court, District of Columbia. Dec. Term, 1809.

TROVER—PLEADING—EVIDENCE.

In trover for "a chest containing sundry tools," and a "trunk containing sundry clothes," the plaintiff cannot give evidence of the value of the tools and clothes; the defendant being charged only with the conversion of the chest and trunk containing the tools and clothes, and not of the tools and clothes themselves.

[See Ball v. Patterson, Case No. 814.]

At law. Trover for "a chest containing sundry tools" and "a trunk containing sundry clothes."

Mr. F. S. Key, for the defendant, objected to the evidence of the value of the tools, the conversion of the chest and trunk only, being averred. The conversion is the gist of the action.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Law, contra. The trover is of a "chest containing sundry tools," and "a trunk containing sundry clothes." The conversion is of the said chest, and the said trunk; that is, the chest containing the tools, and the trunk containing the clothes.

Mr. Caldwell, for the defendant. If it is a charge for converting the tools and clothes, it is too vague and uncertain.

THE COURT (THRUSTON, Circuit Judge, doubting) was of opinion that the defendant was charged only with converting the trunk and the chest, and not the tools and clothes, and of course evidence of the value of the tools and clothes was immaterial.

## Case No. 814.

### BALL v. PATTERSON.

[1 Cranch, C. C. 607.][1]

Circuit Court, District of Columbia. Dec. Term, 1809.

#### TROVER—PLEADING.

A declaration in trover for "a tool-chest containing divers tools, and working utensils," and a "trunk containing clothes," is sufficiently certain.

[See Ball v. Patterson, Case No. 813.]

At law. The declaration having been amended, and a verdict rendered for the plaintiff, the defendant moved in arrest of judgment for uncertainty of the declaration, which was for "a tool-chest containing divers tools and working utensils," and "a trunk containing clothes."

Mr. Caldwell, for the defendant. A chest of tools would have been good; but a chest containing divers tools and working utensils, is not. It is too vague. Bottomley v. Harrison, 2 Strange, 809.

THE COURT was of opinion that the declaration was good as to the trunk and chest, and tools and clothes. Judgment for the plaintiff.

---

BALL, (ROOT v.) See Case No. 12,035.

BALL v. The SAM KIRKMAN. See Case No. 8,658.

BALL, (VIOLETTE v.) See Case No. 16,-954.

---

## Case No. 815.

### BALL v. WITHINGTON et al.

### SAME v. BAILIE.

[1 Ban. & A. 549;[2] 6 O. G. 933; Merw. Pat. Inv. 452.]

Circuit Court, S. D. Ohio. Oct., 1874.

PATENTS FOR INVENTIONS — REISSUE—BROADENED CLAIM.

1. The claim of complainant's reissued patent was, "One or more swinging bread-holders,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reporter by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. Merw. Pat. Inv. 452, contains partial report only.]

suspended from the arms or end plates of a rotating reel, in combination with a furnace, so arranged and connected, that the products of combustion will pass into or through the chamber within which the bread-holders move." The specification shows, that the oven of the patentee is constructed with a solid bottom which completely shuts off the fire from the furnace, and flues by the side of the bread chamber so far removed, and so far cut off from the fire, that nothing but heated currents of air can pass into the chamber: *Held*, that the claim must be construed to be for the application of the rays of heat directly from the fire to the baking chamber, and that, as the original patent contained nothing calculated even to hint how this could be done, but the drawings and model suggest a mode of operation wholly different—viz., the baking of bread by the heat derived from the radiation of heated walls and heated currents of air, the reissued patent was broader than the original.

2. The reissued patent, granted to Hosea Ball, June 14, 1870, and extended for seven years from September 23, 1870, for improvement in ovens, *held* void for claiming what was not embraced in the original patent.

[In equity. Bills by Hosea Ball against John K. Withington and others and against John Baillie for infringement of letters patent. Dismissed.]

S. S. Fisher and John E. Hatch, for complainant.

Edward Boyd, for defendants.

Before EMMONS, Circuit Judge, and SWING, District Judge.

EMMONS, Circuit Judge. The bills charge infringement of letters patent, granted to complainant, September 23, 1856, for an "improvement in ovens," reissued October 12, 1869, and a second time reissued June 14, 1870, and extended for seven years from September 23, 1870.

By agreement of counsel, both cases were argued together, and the decision to be delivered, governs both.

The reissued patent, upon which the bills are founded, contains three claims; but the first, which is as follows, is the only one in controversy: "1. One or more swinging bread-holders, suspended from the arms or end plates of a rotating reel, in combination with a furnace, so arranged and connected, that the products of combustion will pass into or through the chamber within which the bread-holders move."

We prefer to rest the judgment solely upon the ground, that the original patent did not warrant that part of the claim, in the reissue, which includes the direct application of heat to the bread chamber. We say, the direct application of heat, because, we thus construe the words "products of combustion." The only significance which we can give to that part of the claim is, that the rays of heat from the fire must be radiated directly into the baking chamber. The reissued patent, as we construe it, claims a device which will accomplish this result. The infringement is said to depend upon the fact, that the defendants' apparatus applies the "products of com-